Yusif MAFUZ BLANCO, Plaintiff,

v.

Cirilo TIRADO DELGADO, Defendant.

Civ. No. 85–1438 HL.

United States District Court,
D. Puerto Rico.

Aug. 8, 1986.

Pedro Miranda Corrada, San Juan, P.R., for plaintiff.

Marcos A. Ramírez Lavandero, Hato Rey, P.R., for defendant.

## OPINION AND ORDER

LAFFITTE, District Judge.

Plaintiff, Yusif Mafuz Blanco, filed this action under 42 U.S.C. section 1983 against defendant, Cirilo Tirado Delgado, Administrator of the Commonwealth State Insurance Fund ("SIF") in his personal and official capacity. Plaintiff claims he was demoted from the position of Director of the Legal Services Division of SIF solely because of his political affiliation in violation of the First Amendment and Section 1,

Article II of the Constitution of the Commonwealth of Puerto Rico. As relief plaintiff seeks an injunction and damages.

Defendant has filed a Motion for Summary Judgment raising the affirmative defense of a qualified immunity against plaintiff's claim for damages. After considering the motion, without the benefit of a response by plaintiff in opposition, summary judgment is granted in favor of defendant.

Plaintiff claims to be a member of the New Progressive Party ("NPP") and defendant to be a member of the Popular Democratic Party ("PDP"). From 1976 to 1984 the NPP was the governing party in Puerto Rico. However, the PDP prevailed in the November 6, 1984 general election and was inaugurated into office on January 2, 1985.

Following the PDP inauguration defendant was appointed Administrator of the SIF. The SIF is a governmental agency of the Commonwealth in charge of compensation and services owed to workers and employees pursuant to the Workmen's Compensation Act of Puerto Rico. *See* 11 L.P.R.A. sect. 8.

Plaintiff has been an SIF employee for thirteen years. In February, 1982, he was appointed Director of the Legal Services Division of SIF. On May 28, 1985, following defendant's appointment as SIF Administrator, plaintiff was handed a letter removing him as Legal Director and demoting him to a lower position within the agency.

The position of SIF Legal Services Director is classified as a position of "trust and confidence" under the Puerto Rico Public Service Personnel Act, 3 L.P.R.A. sect. 1349. Under this law a "trust" employee may be removed from the position for any reason provided that reason is not in violation of the U.S. Constitution or the Constitution of Puerto Rico. *See* 3 L.P. R.A. sect. 1350; *see also, Guillermo Rosario Nevarez v. Jaime Torres-Gaztambide,* et al., 633 F.Supp. 287 (D.P.R.1986) (stating that the Puerto Rico Personnel Act does not legislate away an employee's First

Amendment protection); COLON v. CRUV, 84 JTS 552 (P.R.1984).

In his motion for summary judgment defendant admits that plaintiff was removed on account of his political affiliation but argue that the removal as Legal Director did not violate the First Amendment or the Constitution of Puerto Rico. Relying on *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), defendant claims he is immune from damages and from suit because his action was not in violation of "clearly settled law."

■ Qualified immunity is an affirmative defense against damages liability which may be raised by state officials sued in their personal capacity. *See Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The general rule of qualified immunity, set out in *Harlow, supra,* is that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 407 U.S. at 818, 102 S.Ct. at 2738. This rule eliminates from consideration claims of the officials' subjective state of mind, such as bad faith or malicious intention, concentrating on the "objective reasonableness" of the official's conduct.

■ As applied, this objective qualified immunity test requires a two part analysis: 1) whether the officer's conduct violated a constitutional right "clearly established" at the time of the violation, and 2) whether the government official asserting the qualified immunity reasonably should have known a violation was being committed. *See, Luisa A. De Abadia v. Luis Izquierdo Mora,* 792 F.2d 1187 (1st Cir.1986). *See Creamer v. Porter,* 754 F.2d 1311, 1317 (5th Cir.1985); *Hobson v. Wilson,* 737 F.2d 1, 26 (D.C.Cir.1984); *Pedro Roman Melendez v. Roberto Inclan,* 641 F.Supp. 998 (D.P.R.1986) (Laffitte, J.).

At the time of this plaintiff's demotion it was clearly established that public employees are protected by the First Amendment's freedom of speech and association from being demoted or dismissed on the basis of political affiliation. *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). The First Amendment protects an employee from patronage dismissals, unless "party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti, supra,* 445 U.S. at 518, 100 S.Ct. at 1295.

Defendant concedes that the law prohibiting patronage dismissals was clearly established at the time of plaintiff's removal. Defendant bases his claim for qualified immunity on the second step of the test—that a reasonable government official in defendant's position would have believed political affiliation to be an "appropriate requirement for the effective performance" of the plaintiff's job as Director of the SIF Legal Division.

■ When applying the second step of the qualified immunity test to a case in which political discrimination is alleged and the BRANTI test is to be applied the First Circuit has explained that "the question becomes, not whether defendants were in fact correct in believing party affiliation to be an appropriate requirement for plaintiff's position, but whether, viewed objectively, they were reasonable in so believing." *Abadia, supra.* An award of summary judgment based on a claim for qualified immunity is proper only if there is no genuine issue of fact that defendant was reasonable in believing political affiliation to be an appropriate requirement for plaintiff's job. *Id.; see* F.R.Civ.P. 56(c).

■ As admitted by the First Circuit in *Abadia,* the *Branti* test is much easier to say than to apply. *Branti* left the courts with few guidelines and the decision has been given varying interpretations in the Circuits. *See Guillermo Rosario Nevarez, supra,* [comparing *Jones v. Dodson,* 727 F.2d 1329 (4th Cir.1984); *Barnes v. Bosley,* 745 F.2d 501 (8th Cir.1984); (*Ness v. Marshall,* 660 F.2d 517 (3rd Cir.1981); *Nekolny v. Painter,* 653 F.2d 1164 (7th Cir.1981).] Whatever the legal interpretation applied, the common thread running through these political discharge cases is the functional approach taken by the courts. The facts of each case are considered in detail. Among the factors taken into account when applying the BRANTI standard are the factors set out by the Supreme Court in ELROD: whether the employee's responsibilities are vaguely defined or of broad scope indicating a policymaking position, and whether the employee acts as an adviser or formulates plans for the implementation of broad goals. *Elrod,* 427 U.S. at 367–68, 96 S.Ct. at 2686–87.

■ In general, it has been held that attorneys in positions representing society as a whole, are not protected by the First Amendment either because they have the discretion to set policy which affects the community at large or because they are called upon to advise and counsel government officials on policy-making decisions. *See Livas v. Pelka,* 711 F.2d 798 (7th Cir. 1983) (Asst. States Attorney); *Mammau v. Ranck,* 687 F.2d 9 (3rd Cir.1982) (Asst. District Attorney); *Ness v. Marshall,* 660 F.2d 517 (3rd Cir.1981) (City Solicitor and Asst. City Solicitor); *Newcomb v. Brennan,* 558 F.2d 825 (7th Cir.1977); *Alfaro De Quevedo v. De Jesus Schuck,* 556 F.2d 591 (1st Cir.1977) (Director Criminal Division of Justice Department for the Commonwealth of Puerto Rico); *compare, Branti, supra* (Public Defender protected by the First Amendment because he owes a duty to a particular criminal defendant not to the public at large,—"Whatever policymaking occurs in the public defender's office must relate to the needs of individual clients and not to any partisan political interests"—445 U.S. at 519, 100 S.Ct. at 1295).

Based on plaintiff's job description embodied in the OP–16 letter submitted by defendant (Appendix A), it appears that plaintiff, as Legal Division Director, was the main attorney for the SIF and adminis-

trator of the Legal Services division. His job required him to counsel SIF officers and employees on all legal matters affecting the agency, to appear before the Legislature of Puerto Rico as an SIF representative, and to decide which cases to appeal to the Puerto Rico Supreme Court. In addition, plaintiff advised defendant on legal matters of concern to SIF and served as defendant's attorney when the SIF was sued or chose to file suit. Plaintiff was also in charge of hiring and firing employees in his office and for preparing the annual budget.

Similar to those cases which have held a public employee attorney unprotected by the First Amendment, plaintiff's job was to represent the SIF and, therefore, the island of Puerto Rico as a whole, rather than an individual client. Plaintiff's job put him in a position of influencing agency policy by authorizing him to decide which cases to pursue before the Puerto Rico Supreme Court and which cases to file for indemnification, and by giving him the responsibility for hiring and firing employees and for preparing the annual budget. Furthermore, the defendant, as SIF Administrator, must rely on the person serving as Legal Director for advise and counsel on legal matters concerning the agency and for adequate legal representation whenever the agency is sued or brings suit.

▆ Given the important policy-making functions of the SIF Legal Director and the close working relationship he must have with the SIF Administrator, we find that a reasonable person in defendant's position could believe that political affiliation is an appropriate requirement for the effective performance of the job. On the merits it may be proven that plaintiff's actual job requirements are not as stated in the job description and/or that defendant was mistaken in the belief that political affiliation was an appropriate requirement. However, on a motion for summary judgment raising a qualified immunity defense "the focus is on the 'inherent powers' of the office not what an individual officeholder actually does." *Abadia, supra* [citing *Meeks v. Grimes*, 779 F.2d 417, 419 n. 1, (7th Cir.1985)].

Based on the "inherent powers" of plaintiff's job we find that a reasonable official in defendant's position would not have believed plaintiff's removal from office was a violation of clearly settled law.

We, therefore, grant defendant's motion for summary judgment on the limited question of qualified immunity, and hold that defendant is entitled to qualified immunity on the claim for monetary damages. Plaintiff's claim for damages against defendant in his individual capacity is hereby dismissed.

Plaintiff's claim against defendant in his official capacity [1] by way of injunctive relief seeking restoration and back pay shall continue pending a hearing on the merits.

IT IS SO ORDERED.

APPENDIX A

| Commonwealth of Puerto Rico PERSONNEL OFFICE San Juan, Puerto Rico CLASSIFICATION QUESTIONNAIRE | DO NOT WRITE IN THIS SPACE | | |
|---|---|---|---|
| 1. Department STATE INSURANCE FUND | | 4. 1st. Last name 2nd. Last name Name | |
| 2. Bureau, division or section LEGAL SERVICES AREA | | 5. Official title of position LEGAL SERVICES AREA DIRECTOR | 5a. Position No. 1090 |

1. For an authoritative discussion on the difference between personal and official liability *see* *Kentucky v. Graham*, —— U.S. ——, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

| | |
|---|---|
| 3. Place of work—city—Address of Street or Bldg.<br>RIO PIEDRAS, PUERTO RICO | 6. Functional title of the position<br>DIRECTOR |

7. State the work you do in the order of importance of the different duties, starting with the most important. State the time you dedicate to each one in fractions or percentage of the total time you dedicate to your position. This is THE MOST IMPORTANT PART OF THE FORM. Use your own words and make descriptions of your duties, so clear that persons who are not familiarized with your work may exactly understand what you do. If this space is not enough to describe your duties, attach additional sheets of paper.

| Time | Duties of the Position | Do Not Write In This Space |
|---|---|---|
| | The person holding this position carries out a highly specialized, complex and responsible work applying his legal knowledge to determine the compensation to be paid in the cases of accidents covered by the Work Accident Act. His work will be done in the specialized area of administrative law therefore he must be familiarized with the different doctrines established by our Honorable Supreme Court and other jurisprudence applicable to Puerto Rico, as well as legislation, rules and regulations established in this field. | |

The officer in this field will act as Director of the Legal Services Area and in this respect, among other things, will have the following duties and responsibilities:

1. Direct, coordinate and supervise all activities assigned to the division heads in the Legal Services Area.
2. Advise the State Insurance Fund Administrator in that related to claims made by the laborers and the employers, as well as in relation to the cases to be taken before the Supreme Court of Puerto Rico.
3. Study the matters related to fundamental law that are submitted by the Administrator, Subadministrator and other officers in the Agency and renders opinions of the corresponding normative character.
4. Appear at Oral Hearings before the Supreme Court, when they are notified to argue the legal matters related to the cases in which the Fund is the plaintiff or the defendant.
5. Study and determine the cases that are adequate to file a suit for Damages, thus exercising the subrogation right of the Fund under Article 31 of the Work Accident Compensation Act in order to recover the costs incurred by the Agency and an additional amount for the Laborer or beneficiaries when the accident results from the guilt or negligence due to an act or omission of a third person.
6. In collaboration with the attorneys under his direction, he will study and review the resolutions rendered by the Industrial Commission and makes the corresponding determination on them.
7. Will prepare Motions and Reconsiderations on resolutions rendered by the Industrial Commission and the briefs that are necessary to be filed before said Organism.
8. Organize Professional Improvement Courses for the attorneys, inviting as conferees attorneys, doctors and other professionals of a well known professional reputation in Puerto Rico.
9. Counsel the attorneys in relation to the cases assigned to them.
10. Coordinate with the legal advisors in private practice, on all matters that are necessary, pursuant to his functions.
11. Review all Requests for Revision, Memorandums and Briefs that are prepared by other attorneys to be filed at the Supreme Court.
12. Orient all the attorneys in regards to:
    1. Answers to the interrogatories
    2. Request for Admissions
    3. Preparation to appear at trials in Damages cases and Compensation claims.
13. Counsel on legal matters all officers and employees in the Agency.
14. Appear at hearings before the Industrial Commission and the Courts of Justice, whenever necessary.
15. Appear before the Legislature of Puerto Rico, whenever necessary.
16. Appear in representation of the State Insurance Fund Administrator, before the Industrial Commission in all cases involving claims for premiums.
17. Select, orient and train the newly appointed personnel in the Office, and is also responsible for the attendance, punctuality, discipline and efficiency of the personnel under his care.

18. Determine the needs for economic resources to develop the activities in the Office.

19. Will represent the Administrator, jointly with the Secretary of Justice in suits filed against the Agency or which have been filed by the Agency against particular persons.

20. Will appear before the Courts of Justice and the Industrial Commission to represent the attorneys under his direction, whenever is necessary.

21. Will prepare the corresponding annual budget for his division.

22. Will recommend recruitment, promotions and dismissal of personnel, as is necessary.

23. Will carry out other related duties as assigned.